FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 12 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

MAHMOOD KHAN,
                Plaintiff,

- against -

DELTA AIRLINES, INC. and COMAIR, INC.,
                Defendants.

---------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

10 Civ. 2080 (BMC)

**COGAN**, District Judge.

Plaintiff, a citizen and resident of Canada, commenced this action against defendants for personal injuries he suffered upon disembarking a Delta Airlines flight in Toronto, Canada. After meeting with the parties, this Court became concerned about using judicial resources to adjudicate a case with seemingly little or no connection with this district, and *sua sponte* raised the issue of forum non conveniens and directed the parties to show cause why this case should not be dismissed.[1]

Although plaintiff maintains that this action should remain in New York, defendants have taken the position that Canada is the proper forum for adjudicating this dispute. This Court deems defendants' [18] Memorandum in Support of Order to Show Cause to constitute a motion to dismiss on forum non conveniens grounds, and for the reasons stated below, the motion is granted.

---

[1] See Chambers v. Nasco Inc., 501 U.S. 32, 111 S. Ct. 2123 (1991) (discussing a court's inherent authority to dismiss an action on grounds of forum non conveniens); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839 (1947) (holding that a district court has the inherent power to dismiss a suit under the doctrine of forum non conveniens); see also Reingruber v. Dennison Int'l Co., Inc., No. 97 Civ. 7023, 1998 WL 760229, *1 (S.D.N.Y. Oct. 30, 1998) (dismissing case *sua sponte* on forum non conveniens grounds).

## BACKGROUND

The following facts, taken from plaintiff's complaint and his response to this Court's Order to Show Cause, are not in dispute.

In 2008, plaintiff Mahmood Khan ("Khan") came from Canada to the United States to visit his daughter who lives in Jericho, New York. Khan's daughter purchased a ticket for his return flight to Toronto aboard Delta Airlines Flight # 5108, which was scheduled to depart from John F. Kennedy International Airport ("JFK Airport") in New York on May 11, 2008. Prior to his flight, Khan requested that the airline provide him with wheelchair assistance at both JFK and Toronto airports.

When Khan arrived at JFK Airport for his return flight to Toronto, he missed his originally scheduled flight, and a Delta Airlines agent issued him a new ticket for a later flight.[2] The agent, however, failed to carry over his request for a wheelchair and none was provided when he arrived in Toronto. Khan walked to the baggage area where he subsequently fell and fractured his hip.

Thereafter, Khan initiated this action against defendants on May 7, 2010, asserting claims under the Montreal Convention[3] and state law claims for negligence and breach of contract. He is seeking damages for pain and suffering, ongoing medical treatment, and loss of future earnings.

---

[2] There is a factual dispute between the parties as to whether Khan missed his flight because he was late, or because defendants failed to provide him with a wheelchair at JFK Airport.

[3] See Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (2000) ("Montreal Convention"). Plaintiff cited to the Warsaw Convention in his complaint but indicated in his response to the Order to Show Cause that any omission of a reference to the Montreal Convention was a technical oversight. See Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3020-21, T.S. No. 876 (1934) ("Warsaw Convention").

At the Initial Status Conference on June 25, 2010, the parties indicated that Khan resides in Canada, the accident occurred in Canada, all potential witnesses to the accident are located in Canada, and Khan received all of his medical treatment in Canada. At that time the Court inquired if defendants anticipated making a motion to dismiss on forum non conveniens grounds, to which they said no. Both parties were unable at that time to anticipate all of the hurdles and obstacles associated with obtaining discovery and conducting depositions in Canada, so the Court gave the parties an opportunity to research these issues before setting a discovery schedule.

At a subsequent conference two weeks later, plaintiff and defendants indicated that they had each retained Canadian counsel to represent them in this matter. Both parties acknowledged the challenges in conducting depositions in Canada, the likely need for letters rogatory, and the difficulties in obtaining medical records under the Canadian health care system. The Court was thus compelled to adopt a Case Management Plan that continued discovery into 2011.

Several days after the second conference, this Court *sua sponte* raised the issue of forum non conveniens and directed the parties to show cause why this case should not be dismissed by July 26.[4]

## DISCUSSION

### I. <u>Application of Forum Non Conveniens under the Montreal Convention</u>

As an initial matter, plaintiff contends that this Court lacks the discretion to dismiss a case brought under the Montreal Convention on forum non conveniens grounds. The Montreal

---

[4] The parties were directed to address specific questions concerning New York's connection to this case as well as to identify any inadequacies in litigating this case in a Canadian forum. In response, both parties submitted Memorandum of Law answering the Court's questions and addressing the Gilbert factors as discussed *infra*.

3

Convention is an international treaty that provides for international air carrier liability in cases of death or bodily injury of a passenger caused by an accident on board the aircraft or in the course of embarking or disembarking. Montreal Convention, Art. 17(1).

Plaintiff has not directed this Court to any provision of the Montreal Convention that supports his position. Rather, he cites to a decision by the Court of Appeals for the Ninth Circuit, Hosaka v. United Airlines, Inc., 305 F.3d 989 (9th Cir. 2002), interpreting a provision of the Warsaw Convention as precluding a federal court from dismissing an action on forum non conveniens grounds. However, the Montreal Convention is not an amendment to the Warsaw Convention, but rather, an entirely new treaty that "unifies and replaces the system of liability that derives from the Warsaw Convention." Ehrlich v. American Airlines, Inc., 360 F.3d 366, 371 n.4 (2d Cir. 2004). Therefore, this Court must look to the text of the Montreal Convention itself to determine if dismissal on forum non conveniens grounds is permissible.[5]

"When interpreting a treaty, we begin with the text of the treaty and the context in which the written words are used." E. Airlines, Inc. v. Floyd, 499 U.S. 530, 534, 111 S. Ct. 1489 (1991) (quoting Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699, 108 S. Ct. 2104 (1988)) (internal quotation marks omitted). "[T]reaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." Id. at 535, 111 S. Ct. 1489 (quoting Air France v. Saks, 470 U.S. 392, 396, 105 S. Ct. 1338 (1985))

---

[5] Plaintiff refers to the Montreal Convention as an "amendment" to the Warsaw Convention and uses the two treaties interchangeably. As noted, the Montreal Convention is a separate treaty that superseded the Warsaw Convention. See Ehrlich, 360 F.3d at 371 n.4 ("Upon entry into force, the [Montreal] Convention will take precedence over the Warsaw Convention and any of its amendments and related instruments, and as a practical matter will supersede the private inter-carrier agreements, when the State or States relevant in a particular accident are party to the new Convention." (quoting Montreal Convention, Talbott Letter, *available at* 1999 WL 33292734)). As the Montreal Convention was signed by both the United States and Canada and entered into force on November 4, 2003, plaintiff's accident, which took place in 2008, clearly falls under the Montreal Convention. See id. at 372 (discussing in detail when the Montreal Convention came into effect and replaced the Warsaw Convention).

(internal quotation marks omitted). "But where the text [of the treaty] is clear, . . . [courts] have no power to insert an amendment." Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 134, 109 S. Ct. 1676 (1989).

In bringing a suit for personal injury under the Montreal Convention, there are five available fora for a plaintiff to initiate an action: (1) the domicile of the carrier; (2) the principal place of business of the carrier; (3) the place where the contract was made; (4) the place of the passenger's destination; or (5) the passenger's "principal and permanent residence" if the carrier operates air carriage services to or from that location. Montreal Convention, Art. 33(1) and (2). Article 33 of the Montreal Convention also clearly, and without limitation, sets forth that "[q]uestions of procedure shall be governed by the law of the court seised of the case." Id. at Art. 33(4). It is well established that the doctrine of forum non conveniens is "procedural rather than substantive." Am. Dredging Co. v. Miller, 510 U.S. 443, 453, 114 S. Ct. 981 (1994) (noting that "forum non conveniens is not a substantive right of the parties, but a procedural rule of the forum"). Thus, this Court needs only to look to the text of the treaty itself to conclude that the Montreal Convention unambiguously provides for a district court to employ its own procedural rules, which include the doctrine of forum non conveniens. See Pierre-Louis v. Newvac Corp., 584 F.3d 1052, 1058 (11th Cir. 2009) (finding "no ambiguity or limitation in the express language of Article 33(4) [of the Montreal Convention], which states in no uncertain terms that questions of procedure – which can only reasonably be read to include *all* questions of procedure [including the doctrine of forum non conveniens] – are governed by the rules of the forum state" (emphasis in original)); In re West Caribbean Airways, S.A., 619 F. Supp. 2d 1299 (S.D.Fla. 2007) (same).

Plaintiff argues that the reasoning of the court in Hosaka is nonetheless applicable because both treaties contain substantially the same provisions governing jurisdiction and procedure.[6] In Hosaka, the Ninth Circuit found Article 28(1) of the Warsaw Convention, which provides a plaintiff with the option of four different forums to commence an action, to be ambiguous. In resolving this ambiguity, the court looked to the treaty's purpose, its drafting history, as well as evidence of the parties' post-ratification understanding and treatment of the issue of forum non conveniens. The court then concluded that because Article 28 provides a plaintiff with specific forum options to commence an action, a federal court is precluded from dismissing an action on forum non conveniens grounds in favor of a forum in another country.[7]

However, at the time the Warsaw Convention was drafted in 1929, unlike today, the doctrine of forum non conveniens was not firmly established as a procedural doctrine in the majority of the signatory countries. This was a key factor in the Hosaka court finding an ambiguity in the treaty and reaching the conclusion that it did. See Hosaka, 305 F.3d at 1003 (noting that just because "the doctrine of forum non conveniens might be characterized as a valuable procedural tool today does not mean that it was so in 1929, when the participating nations applied the finishing touches to the treaty, or even in 1934, when the United States ratified it"). In fact, the Court of Appeals specifically noted that it was offering "no opinion as to

---

[6] Article 28 of the Warsaw Convention provides:

(1) An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

(2) Questions of procedure shall be governed by the law of the court to which the case is submitted.

[7] Other courts that have interpreted the Warsaw Convention have reached a different conclusion. See, e.g., In re Air Crash Off Long Island, New York, on July 17, 1996, 65 F. Supp. 2d 207, 214 (S.D.N.Y. 1999) (holding that the doctrine of forum non conveniens was available under the Warsaw Convention as the treaty plainly incorporated the forum state's procedural law); In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982, 821 F.2d 1147, 1161 (5th Cir. 1987) (same).

whether the text and drafting history of the Montreal Convention demonstrate whether forum non conveniens would be available." Id. at 1001 n.17.

Thus, as this Court finds that the Montreal Convention does not preclude application of the doctrine of forum non conveniens, it now turns to the question of which available forum – New York or Canada – is better suited for adjudicating this dispute.

## II. <u>Forum Non Conveniens Standards</u>

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute," based on the convenience of the parties and interests of justice. Gilbert, 330 U.S. at 507, 67 S. Ct. 839. The Supreme Court set out the modern standard for forum non conveniens in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S. Ct. 252 (1981), and the Second Circuit distilled that standard into a three-step analysis in Iragorri v. United Technologies Corp., 274 F.3d 65 (2d Cir. 2001).

The Iragorri three-step analysis requires that the Court first determine "the degree of deference properly accorded the plaintiff's choice of forum." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005). Second, the Court must decide whether defendants' proposed alternative forum, Canada, is available and "adequate to adjudicate the parties' dispute." Id. Third, the Court "balances the private and public interests implicated in the choice of forum." Id. In applying this analysis, the Court is mindful that defendants bear the burden of persuasion on each element.[8] See Bank of Credit and Commerce Int'l Ltd. v. State Bank of Pak., 273 F.3d 241, 246 (2d Cir. 2001). The extent of defendants' burden will be

---

[8] "[I]n the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties," Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2d Cir. 1956), and make findings of fact, Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003).

7

determined by the amount of deference granted plaintiff's choice of forum. Iragorri, 274 F.3d at 71.

"In deciding where a trial should be held the central notions of the doctrine of forum non conveniens are the convenience of the parties and their witnesses and that justice be served." Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1227 (2d Cir. 1996). There is no precise formula for the Court to assign weight to each factor; rather, the inquiry is "intensely practical and fact-bound." LaSala v. Bank of Cyprus Public Co., 510 F. Supp. 2d 246, 254 (S.D.N.Y. 2007). "The most that may be said is that courts reach informed judgments after considering all of the pertinent circumstances." Id. (citations omitted).

### A. Deference Afforded Plaintiffs' Choice of Forum

When a plaintiff chooses his or her home forum, it is presumed to be convenient and is afforded great deference. Piper, 454 U.S. at 255, 102 S. Ct. 252. "In contrast, when a foreign plaintiff chooses a U.S. forum, it 'is much less reasonable' to presume that the choice was made for convenience." Iragorri, 274 F.3d at 71 (quoting Piper, 254 U.S. at 256, 102 S. Ct. 252). The Second Circuit has specifically cautioned district courts that in these cases, "a plausible likelihood exists that the selection was made for forum-shopping reasons," and even if this forum "was not chosen for such forum-shopping reasons, there is nonetheless little reason to assume that it is convenient for a foreign plaintiff." Id. For this reason, taking into account the totality of circumstances, the Court conducts a "comparative analysis of convenience and forum shopping" to determine the deference due to plaintiff's choice of a New York forum on the Iragorri flexible sliding scale. Norex, 416 F.3d at 154.

In conducting this analysis, although the methodology set forth in Iragorri is not talismanic, the Court is guided by the factors identified in Iragorri as being relevant to

determining whether a plaintiff's choice of forum was genuinely motivated by convenience: (1) "the convenience of the plaintiff's residence in relation to the chosen forum," (2) "the availability of witnesses or evidence to the forum district," (3) "the defendant[s'] amenability to suit in the forum district," (4) "the availability of appropriate legal assistance," and (5) "other reasons related to convenience or expense." Iragorri, 274 F.3d at 72. A court should be guided by the Iragorri factors, but is not required to address each of them as a forum non conveniens analysis tends to be highly factual. See Norex, 416 F.3d at 155.

Since Khan is a Canadian citizen who commenced this action in a U.S. forum, we begin this analysis affording less deference to his choice of a New York forum. When this Court considers the first and third Iragorri factors, they do little to alter the scale. Obviously the fact that plaintiff resides in Canada poses an inconvenience to litigating this dispute in a United States court located in Brooklyn, New York. However, it is undisputed that defendants are amenable to suit here as they are domestic carriers operating out of JFK Airport in New York.

It is when this Court considers the second and fifth factors – availability of witnesses, evidence, and the convenience of the parties – that the balance shifts and the scale tips decidedly in favor of a Canadian forum. In light of the fact that plaintiff's accident took place two years ago and no accident report was made to them, defendants have expressed difficulties in identifying witnesses. Assuming that they are able to identify potential witnesses as discovery progresses, there will arguably be more witnesses located in Canada than in New York. Plaintiff has only identified two potential New York witnesses – the agent that was working at the ticket counter at JFK Airport and Khan's daughter. Conversely, any witnesses to the accident in Toronto, or airline employees and airport officials that were working at the Toronto Airport, are

located in Canada. Most importantly, plaintiff received medical treatment for his injuries exclusively in Canada and all of his treating physicians are located there.

This is not, however, simply a numbers game predicated on where more witnesses are located. The bigger problem presented in this case is that if any of the Canadian witnesses are not willing to participate in this litigation, defendants are without compulsory process to require them to do so. This issue is not present with the New York witnesses where one is the plaintiff's own daughter and the other potential witness is an employee of defendants.

In regard to the location of the evidence, it goes without saying that since most of the witnesses will be in Canada, the majority of records are also located there. Most importantly, all of plaintiff's medical records and employment records that are necessary in litigating his damage claims are in Canada. These documents may also require compulsory process for defendants to obtain them, and the standard forms and releases used in the United States for obtaining medical records are not the same as those used under the Canadian health care system. The only physical evidence located in New York consists of defendants' computerized records that are easily accessible by defendants and can readily be produced in either forum.

Finally, while there are inevitably costs associated with any litigation, these costs are compounded by the fact that the overwhelming discovery that needs to be conducted in this case is in Canada. The majority of key witnesses and evidence are located in Canada and there are hurdles and obstacles associated with obtaining discovery and conducting depositions in Canada. These include the likely need for letters rogatory and the delays associated in obtaining medical records under the Canadian health care system. Both parties have undergone the additional expense of retaining Canadian counsel to assist them in navigating the Canadian judicial system, just to be able to ultimately try this case in New York. All of these factors are going to

substantially protract this litigation beyond what is normally required for a personal injury case where the injury occurred in the United States. It will be significantly more cost-effective and expeditious for both parties to litigate this case in Canada, rather than New York.

Thus, in considering the Iragorri factors, plaintiff should be entitled to even less deference than the ordinary foreign citizen. In such cases where, as here, plaintiff's choice of forum is granted a lesser degree of deference, "'the action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the [alternate] forum significantly preferable.'" Bigio v. Coca-Cola Co., 448 F.3d 176, 179 (2d Cir. 2006) (quoting Iragorri, 274 F.3d at 74-75).

## B. Available and Adequate Forum

"The requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in rare circumstances when the remedy offered by the other forum is clearly unsatisfactory." Murray v. British Broad. Corp., 81 F.3d 287, 292 (2d Cir. 1996) (quoting Piper, 454 U.S. at 254 n.22, 102 S. Ct. 252) (internal quotation marks omitted). Therefore, to be both available and adequate, defendants must be amenable to service of process in the alternative forum and the forum must permit litigation of the subject matter of the dispute. See Pollux, 329 F.3d at 75.

Here, there is no dispute that Canada is an available and adequate forum for adjudicating this dispute. See DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 29 (2d Cir. 2002). Canada is obviously a signatory to the eponymous Montreal Convention and it is one of the possible forums where Khan could have initiated this action. In addition, defendants fully acknowledge that they are amenable to suit in Canada. Furthermore, neither party has raised any concerns about the adequacy of a Canadian forum, nor does this Court have any reason to doubt the ability of a Canadian court to decide this dispute.

11

## C. Balance of Private and Public Interest Factors

### 1. *Private Interest Factors*

Because "[plaintiff] and defendant[s] reside in different countries, any forum will be inconvenient for someone." Int'l Equity Inv., Inc. v. Cico, 427 F. Supp. 2d 503, 506 (S.D.N.Y. 2006). Therefore, "the private interest factors turn on which forum more conveniently can dispose of the litigation." Id. In order to determine whether an action should be dismissed on the basis of forum non conveniens, this Court must balance the convenience of the parties and witnesses, based on the following "private" factors:

> [1] the relative ease of access to sources of proof; [2] the availability of compulsory process for attendance of unwilling witnesses; [3] the cost of obtaining attendance of willing witnesses; [4][i]ssues concerning the enforceability of a judgment; and [5] all other practical problems that make trial of a case easy, expeditious, and inexpensive-or the opposite.

Murray, 81 F.3d at 294; (citing Gilbert, 330 U.S. at 508, 67 S. Ct. 839). "The ease of access to sources of proof, and the availability of compulsory process for the attendance of unwilling, and the cost of obtaining attendance of willing, witnesses, can be considered together, as those factors hinge on the theories which the parties may seek to prove at trial." In re Air Crash Off Long Island, N.Y., on July 17, 1996, 65 F. Supp. 2d at 216. This Court will consider the other private interest factors separately.

"To examine the relative ease of access to sources of proof, and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." Van Cauwenberghe v. Biard, 486 U.S. 517, 528, 108 S. Ct. 1945 (1988) (internal citation and quotation marks omitted).

12

Plaintiff has suggested that "the center of gravity of the case is New York" because that is where he bought his ticket and the Delta Airlines agent failed to transfer over his request for a wheelchair. Although plaintiff is arguably correct that the first domino dropped in New York, it is how the rest of the dominoes fell that is the crux of this case. The facts of what happened in New York are undisputed. Defendants have conceded that their agent did not carry-over Khan's wheelchair request when he was re-ticketed, thus obviating the need to litigate over any of the events that occurred in New York leading up to that point. With the only critical element that took place in New York undisputed, this case centers on what transpired once Khan arrived in Canada. Thus, a trial will focus on determining the extent of defendants' liability and the amount of damages, if any, owed to plaintiff.

Contrary to the undisputed facts concerning what transpired in New York, the facts are hotly disputed over what occurred once Khan arrived in Toronto. For this reason, the majority of discovery will center on activities that took place in Canada, as well as evidence and witnesses located in Canada. First, Khan claims that when the plane landed defendants did not provide him with a wheelchair and he was forced to walk to the baggage area. Defendants contend that they do not provide wheelchair services in Canada, but rather the Greater Toronto Airport Authority ("GTAA"), which is a government run agency, provides such services. During discovery, defendants are looking to determine "who" failed to do "what," including whether: (1) Khan failed to notify a Delta Airlines representative in Toronto that he needed a wheelchair; (2) Khan did request a wheelchair and the Delta Airlines represented never forwarded his request to GTAA; (3) the Delta Airlines agent did relay the request but GTAA never provided a wheelchair; or (4) Khan failed to wait for GTAA to deliver the wheelchair.

Second, the defendants are trying to ascertain the exact nature and cause of plaintiff's fall. Khan simply states that when he walked to the baggage area he suffered a fall and fractured his hip. Defendants have indicated that they have no accident report and need to find witnesses that were at the airport and other evidence to figure out what happened.

Accordingly, central in determining the extent of defendants' liability is whether plaintiff's accident was due to his own negligence, that of a third-party, or solely due to defendants' failure to transfer his wheelchair request. If defendants are able to identify witnesses, this will require depositions of employees that were working at the Toronto airport and any witnesses to this accident. Even if defendants cannot locate the GTAA employee that was working at that time, they will at a minimum seek GTAA's records and want to depose a current GTAA employee to testify as to the procedures for requesting a wheelchair at Toronto's airport. All of these witnesses are most likely located in Canada, and the compulsory process to produce these witnesses at trial is solely available in Canada. Even if these witnesses are willing to testify of their own accord, both parties will still have to pay to transport their respective witnesses to New York. Plaintiff contends that his daughter, who is in New York, will testify concerning "the circumstances of the purchase of the ticket, and the request for wheelchair assistance for her father." However, as defendants have already conceded that they failed to transfer Khan's wheelchair request, her testimony is at most background information.

Third, the parties dispute not only the amount of damages plaintiff is seeking, but to what extent his injuries are attributable to his fall. Based on the limited discovery conducted in this case, defendants believe that Khan suffered from various medical conditions prior to this incident and are looking to obtain extensive medical records to determine what portion of his injuries are attributable to this accident, versus his previous medical conditions. Since plaintiff received

medical treatment exclusively in Canada, defendants will need to depose all of his treating physicians and obtain records from both the medical treatment facilities and any individual physicians' offices. In addition, plaintiff is seeking compensation for loss of income, which will require both parties to obtain his employment records to ascertain damages. The only possible evidence relating to Khan's damage claim is the proposed testimony of his daughter concerning his condition "prior to the occurrence," which although relevant, is not as necessary to support his claim as the testimony of his treating physicians.

Therefore, the first three private interest factors weigh heavily in favor of resolving this dispute in a Canadian forum.

The fourth factor is neutral. There should be no issue enforcing a United States judgment in Canada. Nor is there any foreseeable problem with Khan, as a Canadian resident, enforcing a judgment issued by a court in his own country.

The fifth factor, however, substantially favors a Canadian forum.[9] This Court has already seen the problems and delays associated with adjudicating this case in New York, as evidenced by both parties having to retain Canadian counsel to even identify all the discovery obstacles they may face, let alone identify how to address them. In fact, it was due to the multiple conferences this Court held just to set a rather protracted discovery schedule for a seemingly straightforward personal injury case, which raised flags for this Court that New York may not be the best forum for litigating this dispute. The parties are going to endure substantial time and

---

[9] Plaintiff argues that they have been "clearly inconvenienced" by defendants' late change in position and contend that defendants are seeking a change of forum for a tactical advantage. We take it as a given that defendants are seeking to obtain a tactical advantage, just as plaintiff was seeking a tactical advantage in commencing an action in New York on behalf of a Canadian resident for an accident that occurred in Canada. See Employers Ins. of Wausau v. Fox Entm't Group, Inc., 522 F.3d 271, 276 (2d Cir. 2008) ("[a]ny lawyer who files a case on behalf of a client must consider which of the available fora might yield some advantage to his client, and thus, to that degree, engages in 'forum shopping'").

15

cost in essentially taking a case that is centered in Canada, and transporting it to New York. This is compounded even further by the fact that both parties will simultaneously have to abide by both Canadian and U.S. discovery procedures. If the parties were to litigate this case in Canada, much of this additional time and expense will be alleviated. Moreover, given the fact that plaintiff only initiated this action in May of 2010, and this Court was not able to set a discovery schedule until July 12, plaintiff will not be prejudiced by dismissal at such an early stage in the litigation. See In re Air Crash Off Long Island, N.Y., on July 17, 1996, 65 F. Supp. 2d at 210 (noting that a late forum non conveniens motion is generally disfavored).

When considering all of the private interest factors, they overwhelmingly weigh in favor of adjudicating this dispute in Canada.

### 2. *Public Interest Factors*

The Gilbert "public interest" factors address issues of judicial economy and the efficient resolution of disputes in determining whether a case should be dismissed for forum non conveniens. Specifically, the public interest factors that a court must consider are:

> [1] the administrative difficulties flowing from court congestion; [2] the local interest in having controversies decided at home; [3] the interest in having a trial in a forum that is familiar with the law governing the action; [4] the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

Murray, 81 F.3d at 293 (citing Gilbert, 330 U.S. at 508-09, 67 S. Ct. 839).

In this case, there are no "administrative difficulties stemming from court congestion," because this Court can accommodate these cases on its calendar, and there is no indication of significant court congestion in Canadian courts. See Peregrine Myanmar Ltd., v. Segal, 89 F.3d 41, 47 (2d Cir. 1996).

16

The only local interests plaintiff has identified in having this controversy decided in New York are the general interests of our society and government in protecting "disabled passengers utilizing New York [and United States] airports." However, New York is not "home" to any of the parties to this action – plaintiff is a citizen and resident of Canada; Delta Airlines, Inc. is a Delaware corporation with its principal place of business in Georgia; and Comair, Inc. is an Ohio corporation with its principal place of business in Georgia. Conversely, Canada shares the same general interests as New York, but also has a strong local interest in deciding this dispute. Not only would it be adjudicating a case of one of its own citizens and residents, but it has a specific interest in determining what role GTAA – a Canadian agency – played in this incident. See In re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006, 574 F. Supp. 2d 272, 288 (E.D.N.Y. 2008).

In regard to what law governs this dispute, the parties disagree as to whether this accident qualifies under the Montreal Convention. Plaintiff argues that the failure of defendants to act – the failure to provide a wheelchair upon disembarking – is the alleged injury-causing event or "accident" that qualifies under the Montreal Convention. Defendants contend that the injury was sustained in an independent accident after plaintiff had completed the disembarkation process, and thus Canadian negligence tort law applies. If it is determined that this case falls under the Montreal Convention, neither this Court or its Canadian counterpart will have difficulty in applying the law governing this action.[10] However, if it is determined that it does not, this Court will either have to determine what law applies if plaintiff raises a challenge, or apply Canadian law. Although both forums are similarly situated to adjudicate this case under the Montreal

---

[10] Plaintiff suggests that this Court is better suited to hear this dispute because a factually similar case was decided within this district. See Bunis v. Israir GSA, Inc., 511 F. Supp. 2d 319 (E.D.N.Y. 2007). This authority is no more binding on this Court, than it is on a Canadian court, and plaintiff would have to argue that Bunis is persuasive authority in either forum.

Convention, a Canadian forum will be in a better position to handle this dispute if it is whittled down to a simple slip and fall at a Canadian airport.

Similar to the local interest in deciding this dispute, there is only a general connection between this case and New York citizens that would have to serve on jury duty. It is true that defendants are domestic air carriers that operate out of a New York airport and that a New York passenger is not immune from suffering a similar fate as Khan. However, the issues that would be put before a local jury have very little connection to this forum or what took place in New York. Therefore, it would be slightly unfair to burden a New York jury in hearing this case.

### D.  The Balance of Conveniences

The private and public interest factors in this case are either neutral, or weigh in favor of a Canadian forum. The essence of this dispute is what occurred in Canada, and all of the essential witnesses that have been identified thus far are all located in Canada. When considering all of these factors, this forum is "genuinely inconvenient" and a Canadian forum is "significantly preferable."

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss based on forum non conveniens is granted.

Although defendants have indicated that they are amenable to suit in Canada, to properly protect plaintiff's interests, this dismissal is made subject to the following conditions:[11]

---

[11] See Gross v. British Broadcasting Corp., 386 F.3d 224, 234 (2d Cir. 2004) ("It is not uncommon for a district court to qualify a dismissal for forum non conveniens on the movant's acceptance of certain conditions to reduce the prejudice to the plaintiff.")

1. Should a Canadian court refuse to exercise jurisdiction, or the defendants refuse to submit to jurisdiction exercised by a Canadian court, plaintiff may move in this Court to reopen this action;

2. defendants shall not raise any statute of limitations defense not available when these actions were commenced, that might prevent these actions from proceeding in Canada, provided that plaintiff commences such action within a period of 60 days after the date of this Order;

3. defendants shall stipulate in the Canadian action that plaintiff's daughter requested of defendants' agent in New York to include a note in plaintiff's ticketing portfolio to request a wheelchair in Toronto, and the agent failed to do so;

4. upon request by plaintiff, defendants shall produce any witnesses or documents within their control presently located beyond the subpoena power of the Canadian court, and such witnesses will appear for live testimony in Canada if required by the Canadian court, or letters rogatory if preferred by plaintiff or the Canadian court;

5. defendants shall pay any post-appeal judgment awarded against them by a Canadian court and shall not oppose any judgment entered by a Canadian Court that has become enforceable under Canadian law.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
      August 11, 2010